UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**SOUTHERN DIVISION at PIKEVILLE**

| | | |
|---|---|---|
| ROBERT D. HALL, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No. |
| | ) | 7:20-cv-101-JMH |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| ANDREW SAUL, COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

\*\*\*

Plaintiff Robert D. Hall brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security denying his applications for disability benefits. The Court, having reviewed the record, will **AFFIRM** the Commissioner's decision, as it is supported by substantial evidence.

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support

a conclusion." *Id.* Courts are not to conduct a de novo review, resolve conflicts in the evidence, or make credibility determinations. *Id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). Step One considers whether the claimant is still performing substantial gainful activity; Step Two, whether any of the claimant's impairments are "severe"; Step Three, whether the impairments meet or equal a listing in the Listing of Impairments; Step Four, whether the claimant can still perform his past relevant work; and Step Five, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner*. Id.; see also Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Plaintiff filed an application for Disability Insurance Benefits (DIB) in June 2018, alleging disability beginning May 30, 2015. (Tr. 171). The application was denied initially, on reconsideration, and by an Administrative Law Judge (ALJ) after an administrative hearing. (Tr. 30-53). The Appeals Council declined Plaintiff's request for review, (Tr. 1-6), making the ALJ's August

30, 2019, decision the final agency decision for purposes of judicial review. (Tr. 12-28); 20 C.F.R. § 422.210(a). This appeal followed. Fully briefed[1], the case is ripe for review pursuant to 42 U.S.C. § 405(g).

Plaintiff was 49 years of age at the time he allegedly became disabled on May 30, 2015, and 50 years of age at the time he was last insured for DIB on December 31, 2016. (Tr. 171). Plaintiff has a ninth-grade education and past relevant work as a trailer truck driver and truck mechanic. (Tr. 49, 206). In his initial application materials, Plaintiff alleged he became unable to work due to physical impairments but that he stopped working in the trucking business in December 2011 because "it slowed down" and he was in the "process of building a cattle business[.]" (Tr. 205).

During the relatively short period at issue between May 2015, when Plaintiff sustained injuries in a motor vehicle accident, and December 2016, when he was last insured for DIB, the medical evidence of record reflects that a May 2015 cervical CT scan revealed that Plaintiff was subject to one level degenerative disc disease of the cervical spine (without focal disc protrusion or cord compression). (Tr. 289). A contemporaneous CT of the thoracic

---

[1]Plaintiff has restricted his arguments, adequately developed or not, to the issues specifically discussed below. Plaintiff's Brief (Pl.'s Br.) 1, 6-10. Therefore, recitation of the medical and other evidence is limited to what is relevant for the relatively short period from Plaintiff's alleged disability onset date in May 2015 through the date he was last insured for DIB on December 31, 2016.

3

spine did not show any acute compression fractures or spinal stenosis, (Tr. 291), and an x-ray of Plaintiff's right shoulder revealed normal appearing joints with no evidence of fracture or dislocation (Tr. 292). Six months later, in November 2015, an MRI of Plaintiff's right shoulder did reveal findings consistent with a retracted tendon tear and a tear of the labrum. (Tr. 612).

Also in November 2015, an MRI of Plaintiff's thoracic spine revealed that he had disc bulging (largely mild to moderate) from the T1-2 level through the T12-L1 level. (Tr. 614-15). Additionally, contemporaneous MRI imaging of the claimant's lumbar spine showed disc bulging with neural encroachment at the L4-5 and L5-S1 levels and a radial tear involving the L5-S1 disc. (Tr. 617). Finally, an MRI of the claimant's cervical spine revealed that there was congenital narrowing of the spinal canal, a disc herniation at one level, disc bulging at several levels, a radial tear at the C5-6 level, as well as neural encroachment. (Tr. 619). Several months earlier, in July 2015, Plaintiff had presented to the Highlands Regional Medical Center emergency department complaining of neck pain and slight left thumb numbness of five weeks duration. (Tr. 302). However, after examination, no acute findings were noted, and Plaintiff was diagnosed with neck and cervical strains. (Tr. 304).

In January 2016, John Gilbert, M.D., examined Plaintiff and advised him that surgery was a last resort. Plaintiff reported to

4

Dr. Gilbert that he last worked in mid-November 2015 (approximately six months after his alleged disability onset date). (Tr. 624). Dr. Gilbert advised Plaintiff that he could become a candidate for decompression surgery but would have to learn to live with some of the pain. Dr. Gilbert advised Plaintiff that his May 2015 accident might have aggravated some preexisting asymptomatic degenerative disc disease, spondylosis, and osteophytes. (Tr. 624-25). Dr. Gilbert subsequently provided Plaintiff injections and facet blocks in his back and Plaintiff admitted to improvement in his numbness and tingling after the injections, reporting that they had "helped a lot[.]" (Tr. 587, 591).

Nevertheless, relative to the time between his motor vehicle accident in May 2015 and February 2016, Plaintiff denied to a Highlands Orthopedic provider, Rob Royalty, M.D., that he had received any conservative treatment, despite the recommendation that he follow-up with his primary care provider. Plaintiff further denied any complaints of tingling/numbness. (Tr. 317-318). Approximately three months after Dr. Royalty performed right shoulder surgery (including a rotator cuff repair), at a follow-up appointment, Plaintiff reported that he was "very pleased" with his overall progress after physical therapy, denied neck pain or shoulder instability, and only experienced "slight weakness" when dealing with cattle at his job. (Tr. 399-400).

5

In December 2016, registered nurse Debra Brock, APRN-BC, advised Plaintiff to limit his lifting, pushing, and pulling to less than 10 pounds. (Tr. 588). During earlier visits in June and July 2016, registered nurse Sarah Patrick, APRN-BC, limited Plaintiff to lifting, pushing, and pulling less than 20 pounds. (Tr. 595, 597).

In May 2019 (approximately two- and one-half years after the date Plaintiff was last insured for DIB), Thomas Allen Smith, M.D., stated that Plaintiff's symptoms of pain from his spinal disorder and degenerative joint disease of his shoulder would prevent him from functioning in a competitive work environment, noting that he could not lift anything, could not do any physical labor, and his pain was "disabling[.]" (Tr. 1031-36). At that time, Dr. Smith provided an overly restrictive check-box form opinion that appears to rely, in large part, on Plaintiff's subjective complaints. (Tr. 1035-36).

In August 2018, state agency physician J. Singh, M.D., found that Plaintiff could perform activities consistent with a range of light exertion work with additional postural and manipulative limitations. (Tr. 63-65). In October 2018, P. Saranga, M.D., agreed with Dr. Singh's earlier administrative findings, also noting that although Plaintiff's spine and joint dysfunctions were severe, they did not meet or equal a listing, singly or in combination. (Tr. 80-83).

6

Also in August 2018, state agency psychologist, Paul Ebben, Psy.D., found that Plaintiff was not subject to a severe mental impairment in that the condition did not significantly impact Plaintiff's ability to perform one or more basic work activities, with no limitations in his ability to understand, remember, or apply information; interact with others; in concentration, persistence, or in maintaining pace; and in adapting or managing oneself. (Tr. 61). Dr. Ebben specifically noted that the medical evidence of record was largely focused on Plaintiff's alleged physical "issues" suggesting functional limitations were physical and not mental. (Tr. 61). In October 2018, Michelle Bornstein, Psy.D., agreed with Dr. Ebbens's earlier administrative findings, also noting that the medical evidence of record focused on alleged physical "issues[.]" (Tr. 78-79).

At the administrative hearing below, Plaintiff testified that he started a cattle business in 2012 but was injured in a motor vehicle accident in May 2015. (Tr. 34, 36). He said he had a ninth-grade education, had a driver's license, and drove a vehicle (Tr. 37). Plaintiff then provided testimony as to his past work as a truck driver and truck mechanic. (Tr. 38-39). He said the primary reason he was unable to perform his past work was due to his back, neck, and shoulder. (Tr. 39). Plaintiff testified that he could lift 20 pounds, stand or walk about 10-15 minutes at a time, and sit up to 30 minutes before needing to change positions. (Tr. 40-

41). Plaintiff then provided additional testimony about his alleged impairments, associated symptoms, and treatment. (Tr. 41-47). He said that on a typical day he watches television and sits outside. (Tr. 45).

A vocational expert (VE), Randolph Salmons, Ph.D., testified at the administrative hearing. (Tr. 47-52). Dr. Salmons testified that Plaintiff's past work as a trailer truck driver and truck mechanic were of medium exertion, and semi-skilled to skilled. (Tr. 49). The ALJ asked Dr. Salmons to assume a hypothetical individual of Plaintiff's age, education, and work experience with limitations the same as those ultimately determined by the ALJ to be those of Plaintiff. Dr. Salmons testified that such an individual could not perform Plaintiff's past work but could perform representative unskilled, light exertion occupations in housekeeping; as an assembler, small products; and garage cashier (parking lot attendant). (Tr. 49-50). Finally, the VE, Dr. Salmons, said that his testimony was consistent with the Dictionary of Occupational Titles, as applicable, and otherwise was based on his professional experience. (Tr. 50).

After a careful review of the record, the ALJ found that Plaintiff had the severe physical impairments of degenerative disc disease; degenerative joint disease of the right shoulder status post torn rotator cuff; and obesity; with a mental condition diagnosed as unspecified trauma and stressor-related disorder, as

8

well as chronic obstructive pulmonary disease (COPD), that were not severe. (Tr. 14-16; Finding No. 3). The ALJ found that Plaintiff's impairments (including those deemed both severe and non-severe), singly or in combination, did not meet or equal the severity of a listed impairment. (Tr. 16-17; Finding No. 4). The ALJ found that Plaintiff's complaints of disabling limitations were not entirely consistent with the medical and other record evidence. (Tr. 18). The ALJ found that Plaintiff had the RFC to perform light exertion work with additional postural, manipulative, and environmental limitations, (Tr. 17-22; Finding No. 5), including representative unskilled, light exertion occupations in housekeeping; assembler, small products; and garage cashier, existing in significant numbers in the national economy. (Tr. 23-24; Finding No. 10). Thus, the ALJ found that Plaintiff was not under a disability from his alleged disability onset date of May 30, 2015, through December 31, 2016, the date Plaintiff was last insured for DIB. (Tr. 24; Finding No. 11).

As regulations provide ALJ's with broad authority to determine if a claimant is disabled under the Act, the scope of judicial review is narrowly tailored to account for the ALJ's broad discretion. As the Supreme Court recently reiterated, "[o]n judicial review, an ALJ's factual findings . . . 'shall be conclusive' if supported by 'substantial evidence.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1153 (2019) (quoting 42 U.S.C. §

9

405(g)). The threshold for evidentiary sufficiency under the substantial evidence standard is "not high." *Biestek*, 139 S. Ct. at 1154. Substantial evidence is "more than a mere scintilla"; it means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotations and citations omitted). Under this deferential standard, the Court may neither reweigh the evidence nor substitute its judgment for that of the ALJ. "The substantial evidence standard is met if a reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). The Court's inquiry "as is usually true in determining the substantiality of evidence, is case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close." *Biestek*, 139 S. Ct. at 1157.

Further, Plaintiff has waived any arguments as to any other issue not raised or argued with specificity in his brief. *See Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006) ("[W]e limit our consideration to the particular points that Hollon appears to raise in her brief on appeal."); *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (internal quotation omitted)).

At step three of the sequential evaluation, the ALJ found that although Plaintiff had "severe" physical impairments,

considered singly and in combination, they did not meet the criteria of any listed impairments described in Appendix 1 of the Regulations, (20 C.F.R. Subpart P, Appendix 1), with specific consideration of Listings 1.02 (Major dysfunction of a joint(s) due to any cause) as relevant to Plaintiff's degenerative joint disease of his shoulder; and 1.04 (Disorders of the spine) as relevant to his degenerative joint disease. The ALJ also considered the possible effects of Plaintiff's obesity on his ability to work and perform activities of daily living. (Tr. 16-17). Further, as the ALJ reasonably determined that Plaintiff's alleged mental impairment and COPD did not rise to the level of a severe impairment, it is axiomatic that the ALJ also would not find that they did not meet the criteria of any listed impairment. *See* 20 C.F.R. § 404.1522(a) (impairment is non-severe if it does not significantly limit the physical or mental ability to do basic work activities). Moreover, the ALJ reasonably noted, as pointed out above, that despite Plaintiff's alleged combined impairments, the medical evidence did not document meeting or equaling listing-level severity, individually or in combination, as to Plaintiff's physical or mental impairments. (Tr. 16-17; Finding No. 4).

In the case before the Court, Plaintiff provides no developed argument as to which unidentified impairment in the Listing of Impairments that he allegedly met in combination, or why he specifically did so. Pl.'s Br. 9-10. See *Her v. Comm'r of Soc.*

11

*Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) ("the burden of proof lies with the claimant at steps one through four of the [sequential evaluation process]," including proving presumptive disability by meeting a listing).

Further, in his argument to the Court, Plaintiff misapprehends what is required to establish that he met the severity requirement at step three of the sequential evaluation, be it singly or in combination. Plaintiff mistakenly argues, albeit briefly, that symptoms associated with his alleged impairments "may not be severe enough to be considered a severe impairment" but that when considered in combination, whether reasonably found by the ALJ to be either severe or non-severe, they have the "combined effect of a severe impairment" and that he had established through objective medical evidence that he had a medically severe combination of impairments. Pl.'s Br. 10.

Plaintiff's conclusory argument is not the standard or based on the relevant regulations for establishing whether a claimant's alleged impairments, either singly or in combination, rises to the level of severity required to meet or equal any listing under the Listing of Impairments at step three of the sequential evaluation. See 20 C.F.R. § 404.1512(c); *see also Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006) (unpublished) (finding that an ALJ appropriately considered a claimant's combined impairments at step three in part because "[t]he ALJ described evidence pertaining to

all impairments, both severe and non-severe, for five pages earlier in his opinion and made factual findings").

Thus, the ALJ complied with her step-three requirements, and Plaintiff has not met his burden of proof at step three of the sequential evaluation. *See Murphy v. Sec'y of Health & Human Servs*., 801 F.2d 182, 185 (6th Cir. 1987) (it is the claimant's burden to prove the severity of his impairments).

Plaintiff's arguments about the ALJ's consideration of alleged medical opinions of record, and the ALJ's RFC finding (including her analysis of objective medical findings that Plaintiff characterizes as opinions) do not withstand scrutiny. The ALJ reasonably considered the total record including all **relevant** objective medical evidence and probative medical source opinions in the making of her justifiable RFC finding, and in determining that Plaintiff retained the capacity to perform the representative unskilled, light exertion occupations identified by the VE, Dr. Sammons, through the date Plaintiff was last insured for DIB on December 31, 2016. (Tr. 17-24; Finding Nos. 5, 10).

While Plaintiff may have had limitations that negatively affected his ability to work, the mere existence of impairments such as those alleged by Plaintiff is insufficient to establish disability under the stringent standards of the Act. Instead, Plaintiff had to show that his impairments caused functional limitations so severe that he was unable to engage in any

13

substantial gainful activity for a continuous period of at least 12 months during the period at issue. *See Barnhart v. Walton,* 535 U.S. 212, 220 (2002); 42 U.S.C. § 423(d)(1)(A). Disability, not just the impairment, must last 12 months. *Walton*, 535 U.S. at 220. Here, the evidence simply does not support Plaintiff's claims of completely disabling limitations through the date he was last insured for DIB on December 31, 2016. *See Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) (unpublished) (the ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of the claimant's RFC).

The real question before this Court is whether the ALJ's RFC finding was reasonable. A claimant's RFC is assessed by the ALJ between steps three and four and is "the most [a claimant] can still do despite [his] impairments." 20 C.F.R. §§ 404.1520(a)(4), 404.1545(a)(1),(5). An ALJ is required to "assess a claimant's RFC based on all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). Thus, no medical source opinion is alone conclusive on this issue. *See Brown v. Comm'r of Soc. Sec.*, 602 F. App'x 328, 331 (6th Cir. 2015) (unpublished) ("The district judge correctly decided that 'neither the applicable regulations nor Sixth Circuit law limit the ALJ to consideration of direct medical opinions on the issue of RFC.'"). Similarly, a claimant's

subjective complaints of pain or other symptoms cannot alone establish disability. 20 C.F.R. § 404.1529(a).

While there is a limited burden shift to the Commissioner at step five of the sequential evaluation to identify work existing in significant numbers in the national economy that a claimant can perform, the claimant retains the burden of establishing his RFC limitations. *Jordon v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) ("The SSA's burden at the fifth step is to prove the availability of jobs in the national economy that the claimant is capable of performing . . . . The claimant, however, retains the burden of proving his lack of RFC.")

In her August 2019 decision, the ALJ carefully and reasonably considered the total record, (Tr. 12, 14, 17; Finding No. 5), including thoroughly considering relevant medical opinions and prior administrative findings in the making of her reasonable step-three and RFC findings. (Tr. 16-22; Finding Nos. 4, 5). Further, the ALJ justifiably determined that a significant number of jobs remained in the national economy that Plaintiff retained the capacity to perform, (Tr. 23-24; Finding No. 10); and, thus, Plaintiff was not disabled under the Act. (Tr. 24; Finding No. 11). As noted above, the ALJ reasonably discussed the medical evidence for the period at issue, including, inter alia, relevant objective medical findings (including those associated with examinations performed by Drs. Royalty and Gilbert); Dr. Smith's

15

May 2019 opinion; and the prior administrative findings of state agency medical consultants, Dr. Singh and Dr. Saranga.

Contrary to Plaintiff's argument that the ALJ did not properly "weigh"[2] Dr. Smith's May 2019 check-box opinion, in finding his conclusory opinion not persuasive, the ALJ reasonably noted that statements about a claimant's inability to work are not inherently valuable. (Tr. 22); *See Quisenberry v. Comm'r of Soc. Sec.*, 757 F. App'x 422, 431 (6th Cir. 2018) (unpublished) ("no special significance will be given to source of an opinion—such as whether a claimant is disabled or unable to work—reserved to the Commissioner"). Further, in her justifiable decision, the ALJ pointed out that, in sum, her reasonable RFC finding was supported by her analyses of the relevant medical opinions and the objective medical evidence of record. (Tr. 22). *See Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 604 (6th Cir. 2009) (the decision of the Commissioner must be affirmed unless the ALJ applied the incorrect legal standards or the ALJ's findings are not supported by substantial evidence); *see also Boseley v. Comm'r of Soc. Sec. Admin.*, 397 F. App'x 195, 199 (6th Cir. 2010) (unpublished) (the ALJ is not required to discuss every piece of evidence or data in

---

[2] Plaintiff invokes the wrong legal standard. For disability claims filed on or after March 27, 2017, such as in the case before the Court, the agency does not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from a claimant's medical sources. See 20 C.F.R. § 404.1520c; 82 Fed. Reg. 5844 (Jan. 18, 2017).

16

her opinion as long as she considers all of the evidence and makes a "reasoned conclusion.") (citing *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507-08 (6th Cir. 2006) (unpublished)).

Of significant importance, Dr. Smith's May 2019 overly restrictive check-box opinion as to Plaintiff's work-related limitations was prepared and provided approximately two and one half years after Plaintiff was last insured for DIB on December 31, 2016, and does not indicate that it relates back to Plaintiff's date last insured on December 31, 2016. (Tr. 1035-36). *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir.1988) (tests from 1981 and 1983 were "minimally probative" of claimant's condition in 1979); *see also Weetman v. Sullivan*, 877 F.2d 20, 22 (6th Cir.1989) (deterioration in the claimant's condition after the period of eligibility is irrelevant); *Liebisch v. Sec'y of Health & Human Servs.*, 21 F.3d 428 (6th Cir. Mar. 30, 1994)(1990 report was "necessarily less accurate" about claimant's condition from 1985–1989 than it was about her status in 1990).

As set forth above, the ALJ's reasonable RFC determination is further buttressed by the prior administrative findings of the state agency medical consultants, Drs. Singh and Saranga as relevant to Plaintiff's physical work-related limitations at issue here. In August 2018, state agency physician, Dr. Singh, found that Plaintiff could perform activities consistent with a range of light exertion work with additional postural and manipulative

17

limitations. (Tr. 63-65). In October 2018, Dr. Saranga agreed with Dr. Singh's earlier administrative findings, also noting that although Plaintiff's spine and joint dysfunctions were severe, they did not meet or equal a listing, singly or in combination. (Tr. 80-83). The ALJ found that the state agency medical consultants' administrative findings as to Plaintiff's work-related limitations were "partially persuasive" because of consistency with the overall treatment notes of record through December 31, 2016, the date Plaintiff was last insured for DIB. (Tr. 21); *see McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 32 (6th Cir. 2009) (unpublished) ("State agency medical . . . consultants . . . are highly qualified physicians . . . who are also experts in Social Security disability evaluation.").

Because the ALJ carefully considered the entire record in making her justifiable RFC finding (Tr. 17; Finding No. 5), and reasonably considered all relevant medical opinions (for the period at issue), and prior administrative findings before her, the ALJ's evaluation of these findings and opinions does not support Plaintiff's request for remand but, rather, establishes that the ALJ's decision was, in fact, supported by substantial evidence.

Plaintiff argues that the evidence could be "weighed" differently to support a finding of disability. Pl.'s Br. 6, 8. The Court agrees. However, that is not the Court's role. *Kyle v.*

*Comm'r of Soc. Sec.*, 609 F.3d 847, 854-55 (6th Cir. 2010) ("Even if this Court might have reached a contrary conclusion of fact, the Commissioner's decision must be affirmed so long as it is supported by substantial evidence.")

For the foregoing reasons, the Commissioner's final decision is supported by substantial evidence and shall be affirmed by the Court. Accordingly,

**IT IS SO ORDERED** as follows:

(1) Plaintiff Robert D. Hall's Motion for Summary Judgment [DE 9] is **DENIED**;

(2) The Commissioner of Social Security's Motion for Summary Judgment [DE 11] is **GRANTED**; and

(3) A judgment shall be entered contemporaneously herewith.

This the 26th day of May, 2021.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge